UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

AVERY MULDROW, #57016-056      )
                               )
            Petitioner,        )
                               )
v.                             )           Case No. 2:19-cv-5
                               )
MARK BOLSTER, Acting Warden    )
                               )
            Respondent.        )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Avery Muldrow ("Muldrow"), Federal Register Number 57016-056, is a federal inmate currently incarcerated at Federal Correctional Complex Petersburg. This Petition arises out of disciplinary proceedings that took place at Federal Correctional Institution Butner II ("FCI Butner II") while Petitioner was incarcerated there. In this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, Muldrow alleges a violation of his due process rights in relation to the Butner proceedings that resulted in a loss of sixty-seven (67) total days of good conduct time ("GCT"). Muldrow alleges that the Federal Bureau of Prisons ("BOP") violated his rights by failing to provide him with a copy of the Discipline Hearing Officer ("DHO") report in a timely fashion after the proceedings against him. He seeks expungement of the incident reports at issue and restoration of the GCT.

Respondent filed a Motion to Dismiss (ECF No. 5) with the required notice to pro se plaintiffs under Roseboro v. Garrison,

1

528 F.2d 309 (4th Cir. 1975), and Local Rule 7(k). Muldrow did not file a response and the time to do so has now expired. The matter is therefore ripe for review. For the reasons that follow, the undersigned recommends the court GRANT Respondent's motion and DISMISS the Petition.

## I. Statement of the Case

## A.   Overview of the BOP Inmate Disciplinary Process

The Federal Bureau of Prisons has administrative and rulemaking authority over federal prisons pursuant to Congressional delegation. See 18 U.S.C. § 4001 et. seq. Among the BOP's statutory duties is to "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." Id. § 4042(a)(3). The BOP's Inmate Discipline Program and its associated administrative appeal process are set out in the Code of Federal Regulations. See 28 C.F.R. §§ 541.1, 542.10.

When BOP staff have a reasonable belief that an inmate has violated the BOP disciplinary code, they prepare an incident report and provide a copy to the inmate, usually within 24 hours of the incident. The incident report contains a written description of the charges against the inmate. 28 C.F.R. § 541.5(a). A staff member then investigates the incident and forwards all relevant information to the Unit Disciplinary Committee ("UDC") for an initial hearing. Id. § 541.5(b).

2

The UDC reviews any evidence presented at the hearing either by prison staff or the inmate. The UDC can (1) find that the inmate committed the prohibited act as charged or a similar act if reflected in the incident report; (2) find that the inmate did not commit the prohibited act as charged; or (3) refer the incident report to the Discipline Hearing Officer based on the severity of the charged acts. Id. § 541.7.

If the UDC refers the incident report to the DHO, the inmate is advised of his or her rights and provided with an opportunity to designate a staff representative for assistance at the hearing. Inmates may also provide the names of witness they wish to have called and what testimony they expect the witnesses to provide. At the hearing, inmates are entitled to make statements and present documentary evidence on their own behalf. The DHO considers all the evidence presented and determines whether the inmate committed the charged prohibited act. Id. § 541.8.

The DHO then prepares a report of the proceedings. By regulation, the report need not be verbatim but must include: (1) whether the inmate was advised of his or her rights during the DHO process; (2) the evidence the DHO relied on; (3) the DHO's determination; (4) the sanction imposed; and (5) the reasons for the sanction imposed. Id. § 541.8(h). Inmates are also advised of their right to appeal through the Administrative Remedy Program. Id. § 541.8(i).

The CFR does not specify a time limit for delivery of the DHO report to the inmate. It only says that inmates will receive a copy "following the hearing." Id. § 541.8(h). The associated implementing instructions in the Program Statement for the Inmate Discipline Program say that the DHO provides the inmate with a copy "ordinarily within 15 work days of the decision." Federal Bureau of Prisons, Inmate Discipline Program: Program Statement, Policy No. 5270.09, at 34 (eff. Aug. 1, 2011).

Administrative appeals from DHO decisions bypass the institutional level and are submitted to the Regional Director. 28 C.F.R. § 542.14(d)(2). The time allowed for submitting such an appeal is "20 calendar days following the date on which the basis for the Request occurred," but this may be extended for a "valid reason." Id. § 542.14(a). An inmate may then appeal the Regional Office decision to the General Counsel (Central Office) within "30 calendar days of the date the Regional Director signed the response." Id. § 542.15(a). The General Counsel is the highest level of administrative appeal. Id.

## B.   Factual Background

On January 25, 2015, while he was housed at FCI Butner II, Muldrow was issued an incident report charging him with violations of BOP disciplinary codes 208 (interfering with a security device) and 316 (being in an unauthorized area). Decl. of Sylvia Harris Supp. Resp't's Mot. Dismiss ¶ 4 (ECF No. 6-1). Muldrow received

4

the report on January 26, 2015. Id. The incident report charged him with circumventing prison security procedures by crawling through a turnstile to exit the recreation area without authorization. Id.

Prison officials investigating the incident report advised Muldrow of his right to remain silent at all stages of the disciplinary process. Id. Attach. 1.[1] After being advised of his rights and given a copy of the report, Muldrow said, "It is true." Id. Muldrow received a Notice of Disciplinary Hearing on January 29, 2015. Id. The Notice advised him of the following rights: to have a written copy of the charges provided to him at least 24 hours prior to the hearing; to have a reasonably available full-time staff member represent him before the DHO; to call witnesses and present documentary evidence on his behalf; to present a statement or remain silent; to be present throughout the disciplinary process; to be advised of the DHO's decision, the facts supporting it, and the disposition of the charges in writing; and to appeal the DHO's decision. Id. Muldrow acknowledged the

---

[1] The court may consider the incident reports attached to Respondent's Motion to Dismiss without converting the motion into one for summary judgment because they are integral to Muldrow's claims, explicitly referenced in his Petition, and their authenticity is not in dispute. See Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 587, 606-07 (4th Cir. 2016).

Notice and declined to have a staff representative or witnesses called on his behalf. Id.

On February 9, 2015, Muldrow received a copy of a second incident report charging him with a violation of BOP disciplinary code 112, use of unauthorized narcotics. Id. ¶ 2. The incident report alleged that a urine sample provided on January 28, 2015 tested positive for marijuana. Id. Muldrow was once again advised of his rights using the same forms and process as with the prior incident report. See id. Attach. 2. Muldrow received these forms and notices on February 9. Id.

On February 10, 2015, Muldrow appeared before the DHO for a hearing on each of the two incident reports. Id. ¶ 6. Muldrow waived his right to a staff representative and did not request any witnesses. Id. The DHO determined that Muldrow was responsible for the conduct charged in both incident reports. Id. ¶ 7. The DHO imposed the following sanctions: With respect to the first incident report, disallowance of 27 days of good conduct time and 10 days of disciplinary segregation. With respect to the second incident report, disallowance of 40 days of good conduct time; 40 days of disciplinary segregation; and loss or restriction of visiting privileges. Id. Attachs. 3, 4. The DHO completed and signed both reports on February 27, 2015. Id. ¶ 8.

On March 15, 2015, Muldrow completed two "Inmate Request to Staff" forms requesting copies of the DHO reports for each incident

report adjudicated at the February 10 hearing. Pet. Exs. 2, 3. (ECF No. 1 at 18, 19). The record does not reflect any action by prison officials in response to these requests.

Muldrow filed the instant Petition on January 3, 2019. At the time of filing, he had not received a copy of the DHO reports from the February 10, 2015 hearing. In his Petition, Muldrow alleged that he had not sought any administrative remedy because it was futile. Pet. 4, 9. Muldrow explained that because the BOP would not accept a DHO appeal without an accompanying copy of the written report, he could not appeal the DHO's decision. Id.

Muldrow received copies of the DHO reports on March 13, 2019, from staff at FCC Petersburg. Harris Decl. ¶ 9. Prison officials also notified Muldrow that he could appeal the DHO's decision through the BOP Administrative Remedy Procedures within 20 calendar days of receiving the DHO reports. Id. Muldrow never filed any administrative remedy request. Id. Attach. 5.

## II. Analysis

### A. Federal Prisoners Are Entitled to Limited Due Process Rights in Prison Disciplinary Proceedings

In his § 2241 petition, Muldrow alleges that he was deprived of 67 total days of earned good conduct time in violation of his Fifth Amendment right to due process. Because this deprivation would have the functional effect of extending Muldrow's time of imprisonment, it is a cognizable claim under § 2241. See Rodriguez

v. Ratledge, 715 F. App'x 261, 266 (4th Cir. 2017) (unpublished per curiam opinion); see also Preiser v. Rodriguez, 411 U.S. 457, 500 (1973). A prisoner's good conduct time is a protected liberty interest under the Fifth Amendment. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Prisoners are therefore entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the ... right is not arbitrarily abrogated." Id.

Nonetheless, because "[p]rison disciplinary proceedings are not part of a criminal prosecution ... the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. In the context of disciplinary proceedings, the Supreme Court has identified three distinct due process rights to which prisoners are entitled: (1) written notice of the charges at least 24 hours in advance of the hearing; (2) the opportunity to call witnesses and present evidence when not unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the evidence relied on and the reasons for the disciplinary action taken. See id. at 564-66. Substantively, a disciplinary adjudication revoking good time credits comports with due process if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985).

8

**B.   Prisoners Must Ordinarily Exhaust Administrative Remedies Before Filing § 2241 Petitions, but Courts May Excuse that Requirement**

Ordinarily, federal prisoners must exhaust their administrative remedies prior to filing federal habeas petitions. McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished per curiam opinion); see also Timms v. Johns, 627 F.3d 525, 530-31 (4th Cir. 2010); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Administrative exhaustion serves two main purposes. First, it "protects 'administrative agency authority.'" Woodford v. Ngo, 548 U.S. 81, 89 (2006) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Requiring exhaustion ensures that agencies have an opportunity to correct mistakes in their own programs and promotes adherence to agency procedure. See id. Second, because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," exhaustion preserves judicial efficiency. Id.

Procedural default may arise if an inmate seeking federal habeas relief cannot properly exhaust his or her administrative remedies due to agency rules (such as time limits for filing appeals). See McClung, 90 F. App'x at 445-46; Moscato, 98 F.3d at 760. Prisoners can overcome procedural default only on a showing of cause and prejudice. McClung, 90 F. App'x at 445. Because the exhaustion requirement in § 2241 is judicially imposed, however,

courts may also excuse it when pursuit of administrative remedies would be futile. See Larue v. Adams, No. 1:04-0396, 2006 WL 1674487, at *8 (S.D.W. Va. June 12, 2006) (noting widespread recognition of "futility" exception and suggesting that 4th Circuit precedent supports it).

Muldrow has made no attempt to exhaust, or even initiate, the BOP administrative remedy procedures. His petition, filed before he received copies of the DHO reports, simply stated that the process was futile because "the BOP will not accept a DHO Appeal without a written copy of the DHO Report." Pet. 9. But even after receiving copies of the reports and direction to file any appeal within 20 days, Muldrow did not file an administrative remedy request. Any attempt to do so now would be untimely under the regulations. Although BOP officials may excuse untimely filings if the appealing prisoner demonstrates good reason for the delay, Muldrow has not alleged that anything prevented him from filing a timely administrative appeal after receiving the DHO report.

However, as discussed below, the merits of Muldrow's claim are easily resolved against him. In such instances, courts may "skip over" a preserved exhaustion defense and deny (not grant) a petition on the merits if doing so is easier. Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015); see also Granberry v. Greer, 481 U.S. 129, 131 (1987) ("[T]here are some cases in which it is appropriate for an appellate court to address the merits of

a habeas corpus petition notwithstanding the lack of complete exhaustion."). Thus, for purposes of this case, this Report recommends excusing the exhaustion requirement and dismissing Muldrow's claim on its merits.

## C.  Muldrow's Delayed Receipt of the DHO Report Did Not Violate His Due Process Rights

Muldrow's claim fails on its merits because he received all the process to which he was entitled. His petition stated only that he had not received copies of the DHO reports at the time of filing. While true at the time, Muldrow has since received a copy of both reports. These reports set out the reasoning and underlying facts of the decisions revoking his good conduct time credits. As such, all three due process requirements have been satisfied.

Moreover, delayed receipt of the DHO reports is not a due process violation. The only authority setting a putative time limit on delivery of DHO reports is the BOP Program Statement, which states only that a prisoner will receive a copy "ordinarily within 15 work days of the decision." BOP Policy No. 5270.09, at 34 (emphasis added). Even assuming the delay in Muldrow's case violated this policy, that does not amount to a due process violation unless it prejudiced his administrative appeal. See Cook v. Warden, Fort Dix Corr. Inst., 241 F. App'x 828, 829 (3d Cir. 2007); Bauer v. Warden FCI Williamsburg, No. 6:16-cv-304, 2017 WL

318683, at *2 (D.S.C. Jan. 23, 2017) ("[T]he BOP's violations of its own policies do not amount to a due process violation.").

Courts in this circuit and beyond have consistently rejected due process challenges based on delayed receipt of a DHO report. See, e.g., Shahan v. Ormond, No. 3:18-cv-200, 2018 WL 6681210, at *8 (E.D. Va. Dec. 19, 2018), appeal docketed, No. 19-6346 (4th Cir. Mar. 13, 2019); see also Pinson v. Berkebile, 528 F. App'x 822, 826-27 (10th Cir. 2013) (finding no prejudice to prisoner challenging disciplinary proceeding from multi-year delay in delivery of DHO report); Consolidation Coal Co. v. Borda, 171 F.3d 175, 183 (4th Cir. 1999) ("It is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay."). As noted above, Muldrow was free to file his administrative appeals once he received copies of the DHO reports.[2] Although the length of the delay is striking, Muldrow still had years remaining on his sentence at the time he received the delayed report. Muldrow has therefore not

---

[2] Respondent also points out that the regulations themselves do not require inclusion of the DHO report in an administrative appeal if a prisoner specifies the date of the hearing and the nature of the charges. Br. Supp. Mot. Dismiss 16-17; see also 28 C.F.R. § 542.15 (setting out administrative appeals process); Griffin v. Ebbert, 640 F. App'x 181, 184 (3d Cir. 2016) (per curiam) (rejecting petitioner's due process challenge premised on late receipt of DHO report because it did not prejudice his ability to invoke the administrative appeals process).

demonstrated prejudice from his delayed receipt of the reports sufficient to violate his limited right to due process.

In the brief in support of his Petition, Muldrow also argues that the decision revoking his good conduct time is not supported by "some evidence" because "the DHO Reports do not exist or at least were not provided to him following his hearings before the DHO." Br. Supp. Pet. 5 (ECF No. 1 at 15). But Muldrow has since received copies of the reports, and both reference sufficient evidence to support the DHO's decisions (for example, Muldrow's confession and positive drug screen). Accordingly, this Report finds that Muldrow has not shown a violation of his due process rights in relation to his delayed receipt of the incident reports identified in his petition.

### Conclusion

For the foregoing reasons, this Report recommends the court GRANT Respondent's Motion to Dismiss, (ECF No. 5), and DISMISS Muldrow's Petition WITH PREJUDICE.

### Review Procedure

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1),

computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits and extra three (3) days if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).


/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
8/27            , 2019

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was

mailed this date to:

**Avery Muldrow**
No. 57016-056
FCC Petersburg (Medium)
P.O. Box 1000
Petersburg, Virginia 23804

and an electronic copy was provided to:

**Garry D. Hartlieb**
Assistant United States Attorney
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510

Fernando Galindo, Clerk

By _____
Deputy Clerk

August 27 , 2019